The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may draw near and be heard, and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced, and the times will be as allotted to counsel. The first case today is Mission Product Holdings, Inc. v. Schleicher & Stebbins Hotels, LLC, et al. Appeal number 19-9004. Good morning. I'm Chief Judge Howard. Mr. Keach, before you begin, there are two housekeeping matters that I'd like to address. First, I would like to ask Judge Selya and Judge Kayada, who will be sitting with me today, first Judge Selya and then Judge Kayada, to test their microphone by saying good morning so their image will appear on each other's screens. Good morning. This is Judge Selya. Yes, and good morning. This is Judge Kayada. And second, Mr. Keach, to help us with the timekeeping, if you would like to reserve any rebuttal time, please let me know before you begin your argument so that I can help you keep track of that. And you may proceed with your argument, Mr. Keach. Thank you, Your Honor. May it please the Court, Robert J. Keach, Bernstein Shore for the appellant, Mission Product Holdings, Inc. Your Honor, I would like to reserve two minutes for rebuttal if it pleases the Court. Yes. Thank you, Your Honor. This Court recently stated in Wheeling and Lake Erie Railway Co. v. Keach, a case I have some familiarity with, that the phrase burden of proof is not merely a rhetorical flourish. It signifies that the party to whom the burden is assigned must offer evidence, either direct or circumstantial, sufficient to persuade the fact finder of some fact or proposition to a certain quantum of proof, here a preponderance of the evidence. In Wheeling and Lake Erie, the Court upheld a ruling denying a secured party relief, including adequate protection, because the secured party offered no probative evidence regarding the value of its alleged collateral. Excuse me, Mr. Keach. As I recall it, the Wheeling case to which you refer was an adjudication of an adversary proceeding on the merits, not a summary proceeding such as a hearing on a motion for relief from the automatic stay, which we have described as a summary proceeding. Isn't that a distinction between the two cases? It is a distinction, Your Honor, but I would argue in this case it's a distinction without a difference because of the specific text of Rule 9014 as it relates to contested matters. There's no question that this motion for relief was a contested matter. We objected to it under the rules of bankruptcy procedure that makes it a contested matter. And under Rule 9014, what then is mandatory is an evidentiary hearing to the extent that there are unresolved material issues of fact. Excuse me, so your premise is that an evidentiary hearing is required on any contested motion in the bankruptcy court? Any contested motion that involves contested issues of material fact, Your Honor. If we were talking only about issues of law, the court could certainly proceed without taking evidence, but that wasn't this case. And can you direct us to any authority applying the standard of Rule 9014 to a motion for relief from the automatic stay? We cited multiple cases in our brief, Your Honor, too, that I would point out specifically the Farrell decision and the MF Global decision. MF Global in particular says, and it was with respect to a state proceeding, a bankruptcy court abuses its discretion where in the face of contested issues of material fact, it fails to conduct an evidentiary hearing and fails to allow the parties sufficient discovery to reduce evidence for that hearing. In Farrell, the court found that in the presence of contested issues of material fact, a move on who fails to introduce evidence will fail to meet her burden of proof. 9014 applies in motions for relief from stay. And in fact, in all motion practice before the bankruptcy court where what is at issue are issues of fact. Is what Mr. Keechins, could you help us on what was at issue here? I thought for a motion to stay, the bankruptcy court needed to determine that there was a colorable claim by S&S. Well, it needs to determine that it has actually think once the part of the matter is in contest. I think the I think the secured party has to do far more than that, Your Honor. I think the secured party has to establish that it has a security interest in the assets at issue by a preponderance of the evidence. That's what the cases construing 9014 say. And I think 9014 is the command here. It's mandatory. And there's no question here that we put the question of whether or not S&S had waived its lien into issue as a matter of fact. And in fact, Your Honor, I would argue that even under the colorable claim test, it would fail. Let me ask you about that because I had some trouble understanding what your waiver theory was. As I understand it, during the auctioning, your client offered to quote unquote leave behind some assets in the estate. In other words, it would effectively be buying that only some, but not all of the assets of the estate. Well, that was the beginning, Your Honor, of what happened. We bid on that basis. That bidding methodology was accepted. But then there was an actual agreement among the parties at the auction. That not only were we going to go forward on that basis, but that S&S was going to go forward on that basis. Let's take it a step at a time. If your bid had been accepted, there would have been some assets left behind in the estate. And as I understand it, those would have been subject to a security interest that any other party had in those assets. No, they would not have been, Your Honor. How could a purchaser leave behind assets in the estate and effectively divest a secured lender or a secured party of an interest in either the assets or the proceeds of the assets? Sure. Quite easily in this context, Your Honor, this was a sale free and clear of liens, claims, and encumbrances. So what Mission was proposing by its we're leaving estates behind shorthand was that Mission would acquire the assets free and clear of S&S's liens and re-contribute those assets to the estate so that they could be distributed to other creditors other than S&S. When S&S adopted the same methodology, S&S didn't have to go through that two-step process. They could just do one step. It could waive its liens. And when S&S and the debtor agreed specifically on the record at the auction that they were going to adopt Mission's methodology, the thing we sought to clarify, I specifically sought to clarify, was that when they were talking about leaving assets behind, they were meaning the same thing that we meant. Specifically that those assets would be available for distribution to creditors other than S&S. And the debtor and S&S agreed to that. Take me back to your first point because I'm having trouble understanding it. If a debtor has an asset, say he's got a truck, and there's a party, party A has a security interest in that truck that is senior to any other security interest and is perfected, it's flawless. You seem to be saying that a third party, party C, could do a deal with the debtor where the third party would get the truck but contribute back some assets, like say $1,000 to the debtor, and the secured party, party B, would be wiped out. Your Honor, this was no deal with the debtor. We were in the midst of a court-approved, court-ordered 363F sale consented to by S&S and the debtor and us. How can you wipe out the interest of a secured party without the agreement of that secured party? 363F of the Bankruptcy Code specifically provides that you can sell assets free and clear of a secured party's lien without its consent so long as you meet the provisions of 363F. Doesn't the secured party then, their interest carry over to the proceeds of the sale of their collateral? Except that the assets wouldn't be the proceeds of the sale of the collateral. The proceeds of the sale of the collateral would have been the cash consideration we paid but not the assets we acquired. If we redistributed those assets, we could recontribute them without their lien. The other important aspect of this, Your Honor, is that S&S actually agreed that not only would our assets go back in and be available for other creditors to be paid from, but they agreed that the assets they left behind would be free of their lien and available for distribution. But isn't that important, Mr. Keech? What they agreed is that the assets would be left behind. There's nothing in the record that I've seen that indicates an agreement by S&S to taking the assets and then recontributing them. I disagree, Your Honor. In fact, if you look at the colloquy among counsel and then I think there are four other... that indicates that it agreed to recontribute assets that it had taken out of the bankruptcy. The colloquy that's represented in the transcript was not a two-way colloquy. It was a three-way colloquy. Counsel to S&S was present and acquiesced in that discussion. Not only that, Your Honor, but the auction went forward entirely on that basis. And if you look at Judge Deasy's sale order, which the court below now under a successor judge because Judge Deasy has retired, Judge Deasy's sale order admittedly, according to Judge Pano, says nothing about the manner in which the assets are being distributed. That's because if you look at the math that was done by Judge Deasy to approve S&S as the winning bidder, it only makes sense if S&S is waiving its liens. If S&S was not waiving its liens, then the estate actually achieved no benefit whatsoever as a consequence of the consideration by virtue of, quote, leaving assets behind. It would have been a false bid. It would have been a no-bid bid, in fact. What you would have allowed S&S to do in that circumstance is better than a credit bid. When a secured party credit bids, it at least waives its lien and waives its debt with each credit bid that it makes. It's basically saying, I am retiring the debt. I am forgiving the debt to you, debtor, and I am therefore losing my lien to the extent I'm forgiving the debt. And both go away. If you construe their, quote, leaving assets behind as unlike what we were doing, providing unencumbered assets to the estate, as simply returning encumbered assets to the estate that they could just take back when the auction was done, then they provided no value. And if they provided no value, then the math in the sale order makes no sense. Could you point us to some authority that would support the proposition that had your bid been accepted, then the estate would have been left with assets, and those assets would not have been subject to the security interest of S&S. Yeah, 363F, Your Honor. This was an auction being conducted under 363F. Well, I know that. But is there any case at all that blesses this notion that you could – in other words, all of the assets, as I understood it, were subject to S&S's security interest. Your proposition is that you could make a bid that would, in effect, destroy some of that security interest in assets left behind with the estate. It's not that we get to destroy anything, Your Honor. It's the essence of a 363F sale that the assets are free of the lien when they're purchased. And I ask my question again. Can you cite us to any case that so holds? I'm not aware of any other – I'm not aware of any published case that deals with the precise facts of this case where the parties mutually agreed to leave assets behind free of a lien. That's not my question, Mr. Keech. Help us here. I'm saying this leave-behind bid, the way you're describing it to us, is a mechanism whereby some assets in the estate that are subject to a security interest get left behind, either left behind or recontributed, so that they're no longer subject to the security interest. And I'm asking if there's any case that says, yes, that's what happens. I'm not aware of any case involving recontributed assets, Your Honor. I think this was a unique bidding methodology adopted by both of the parties to this case. It's not uncommon, however, for purchasers in 363F sales to take assets that they have purchased and redirect them to parties outside of the bankruptcy priority, such as pools of employees, for example. So in practice, it's quite common. I can't point you to a reported decision where the recontributed assets methodology has been blessed or not blessed by a court. Counsel, your time has expired, but I do have one question for you, and then I'm going to ask the other members of the panel whether they have additional questions for you at this point in time. What I want to do is take you back to where you opened the argument on both the standard for decision and the standard for review. Once the relief is granted from the stay, once that motion is granted and the lien is then enforced or foreclosed, or the action begins to do that, there are standards at that point in time to determine whether the lien can be foreclosed or otherwise enforced. If your standard preponderance applies to the motion for relief from stay, what's really left in a case? Wouldn't the preponderance standard tend to come into play at the merits, and isn't that the point of our prior cases that talk about you only have to show a colorable claim at this stage, a colorable lien? I don't think so, Your Honor. In this case in particular, remember, we're dealing with cash in an account. The relief from stay that was accomplished here was not to let S&S then foreclose on that cash. There was no state law process. But didn't your side in the Supreme Court say that there are opportunities to unwind? There are opportunities for us, and one of the reasons this was not moot, although, by the way, the debtor did argue that this very ruling rendered the case moot, and they got one justice to agree with them. Fortunately, only one, which I think implicates the divestiture rule, which we'll rely on our brief to talk about. But in this case, the remedies we were referring to, in terms of our having remedies that did not render the case moot, were to actually cause other administrative claimants, like professionals, to disgorge assets back into the estate that would clearly not be subject to the lien. And wouldn't you still have that opportunity? We do, but that doesn't mean that they have a lien on the asset. So why would the preponderance standard apply at this stage, which seems to be counter to our law? I think the colorable claim test merely says that in order to get relief in an otherwise uncontested setting, the secured party has to establish a colorable lien. I think 9014 then kicks in when the other party, through creating legitimate material factual issues, puts its lien into question. And then I think the Bankruptcy Code's burden of proof is clear. Just as in Wheeling, the burden of proof was with the secured party, stays with the secured party the whole time, to establish by a preponderance of the evidence the extent of its lien. I think the colorable claim test is just a threshold that the secured party has to get over to get listened to by the court. Unless there are legitimate factual issues, 9014 applies. Thank you. Judge Selye, additional questions? Nothing that won't keep till rebuttal. Judge Kayada? Nothing. All right, thank you. Attorney Keech, please mute your audio and your video at this point. And Attorney Kandon, counsel for the appellees, please unmute your audio and video. And I would once again ask Judge Selye and Judge Kayada to test their microphones so their images will appear on the other judges' screens. Judge Selye? Judge Selye, test, test, testing the video. And Judge Kayada? Yes, Kayada, testing the video. Attorney Kandon, please proceed with your argument. Good morning. May it please the court, Christopher Kandon on behalf of the FLE Schleicher & Stebbins Hotels. I'll refer to Schleicher & Stebbins Hotels as S&S, as you all have during the course of this preliminary portion of the argument. I think it's important that we're not distracted by Mission's efforts to rewrite the record and collaterally attack final orders. This matter is straightforward, and the record fully supports the Bankruptcy Court's decision to grant S&S relief from the automatic stay. For the past four-plus years, Mission has employed a litigation strategy to impose market uncertainty on a competitor and maximum cost on the estate and S&S. This matter and this appeal may be the most obvious and egregious example of this strategy yet. The premise upon which the entire appeal rests, that S&S no longer holds a valid lien on the debtor's remaining asset, is contrived, and it's not supported by the record and is actually inconsistent with Mission's own prior statements. Moreover, it's held together by arguments that have been waived or otherwise barred by final orders. The example that just occurred, we were just talking about the bid values which were already approved before this court as a final order in the sale process, to which this court determined S&S was a good-faith purchaser and Mission's objections to the sale process were otherwise moot because we were a good-faith purchaser. It should not be lost on this court all of the pleadings, orders, and cases that Mission must overlook to support its position today. I wanted to raise one issue that just got very brief overview in that first preliminary discussion, which is the mootness issue. We've argued that this case is actually moot, and we filed a motion for that determination. In Soares v. Brockton Credit Union, this court has already held that an appeal seeking to overturn a stay relief order is moot once the property subject to the stay has been foreclosed upon or transferred to a good-faith purchaser. It's well established that an appeal will be dismissed as moot if a stay pending appeal is not obtained and the moving creditor subsequently conducts a foreclosure sale. That's what happened here. Have you got any mootness case which applies in a situation like this one where the property foreclosed upon is money and there is no reason to believe that the monetary claim can't be pressed against the alleged lien holder? I don't have one that has deals with cash. Isn't that a dispositive distinction? Because cash is inherently fungible, and there's no third-party interest involved here, so equitable mootness, it would seem to me, doesn't kick in. I think your own case, the First Circuit's case in Greylock Glen Corp v. Community Savings Bank, found that even when the purchaser of the foreclosed real estate property was the creditor and the party to the appeal, that case was still found to be moot. So what's the difference between the secured party appearing at the foreclosure sale, buying the real estate on its own and having that property and still being a party to the appeal going forward? If you can just disgorge, why couldn't the court have ordered disgorgement of the real property in that case or return the real property in that instance? Instead, the court found that the appeal was moot. Among other things, real estate, as you want to know, is quite distinct from money, and real estate could certainly be transferred at any time while the action is being litigated, etc. But that's why my question was specifically about a fund of money. That's all that we're concerned with here. I understand the question. I think I've read every case that you've cited, and I haven't found a case in or out of this circuit that deals on comparable facts with a fund of money and no involvement by any third party. I think the Greylock case is analogous to this situation. I think the court found, this court found, even though it was real estate, that the appeal was moot. The secured party was still holding the asset. Why couldn't the court order the return of the real estate in the same manner that Mr. Keech is arguing or Mission is arguing that the bankruptcy court can order the return of the cash? I think there are two problems with – sorry, Your Honor, you had a question? Well, isn't there a difference, though? As I understand it, in some of these cases what you have is you have a foreclosure and a third party buys the property. And they're innocent. They have nothing to do with the dispute with the other party in the bankruptcy proceedings. So it makes perfect sense that we'd say that third party can rest. But here it seems a little different where it's the party that's actually involved in the dispute and knows there's a dispute. Right. I think that that's true and I think redressability is an issue in terms of determining on the innocent third party. But redressability wasn't an issue in cases like Greylock because the lender was a party to the case and could easily be ordered to return the property in the same way that we're discussing now. It could be discoursed. Still, this court found mootness in Greylock and other courts from around the country have ruled similarly in similar circumstances. Doesn't HealthCo, doesn't our case in HealthCo International sort of lean the other way? Where there's been no showing that any portion of the funds dispersed could not be recovered with relative ease? I think in HealthCo, I don't have that case familiar right in front of me, Your Honor. My understanding though from HealthCo and it being consistent with Greylock is that there's this bankruptcy mootness issue where if you're not just talking about inability to unwind a transaction, instead you're talking about the special need for finality in bankruptcy court orders. And that is the context of what we're talking about in the motion for relief from stay context. No stay was granted pending the appeal and so now the asset has been foreclosed upon and the party doing that has now relied upon that for more than 18 months. But how does that distinguish HealthCo? HealthCo was a bankruptcy case as well. I don't believe it was under the relief from stay proceeding where the request was for a stay pending appeal that was not obtained. And so the finality of the order and allowing the party to actually foreclose on the property is a distinguishing factor. So in a prior round in this case, the Supreme Court of the United States seemed to think that maybe this idea of unwinding does dispose of a mootness argument. Can you distinguish what was said there with what we're dealing with here? I think at that time they were talking about disgorging funds from the debtor's estate in terms of professional fees of the debtor in terms of whether or not the appeal and whether or not the claim at the Supreme Court level, the speculative administrative claim that was being suggested could have any merit. I think Mr. Keech was pointing to the dissenting opinion by Justice Gorsuch which claimed that there was no reason to even be holding that appeal because there were no assets left in the estate and that there was no reason to even go down this path proving their speculative administrative claim because there was concern on his part that they would never be able to do that in the first place. So I don't know if that directly answers your questions, Justice Howard. We're all seeking the answers, don't worry. Could you turn your attention for a minute? I was asking Missions Counsel this same question that I'd like to put to you. Take Missions' bid at the auction and assume it had been accepted and was the prevailing bid. As I understand it, if the estate had $100 worth of assets, they were bidding $100 but they were going to leave behind $10 worth of assets and so their bid got valued at $110. The premise of that seems to be that the money left behind or re-contributed to the estate would be free and clear of the security interest that had attached to the property that the estate conveyed away as part of the deal. Are you aware, could you explain to us how this works or if there are any cases that says that you can destroy the secured lender's security interest through this mechanism? No, I'm unaware of any case that would work in that manner. And frankly, I find the description of the auction and then the subsequent proceedings that occurred after the auction to be totally inconsistent with that argument that there was even a re-contribution or a waiver in the first instance. I mean, I want to take a step back. I think the standard is abuse of discretion. I do not think the bankruptcy court shifted any burden upon Mission. The burden was on S&S to prove that there was no equity in the property and we did that by showing all the record sites but that's important for this reason that I'm going to talk to you about right now, Judge Cayetta, which is after the auction occurred, which established the winning bid, which was dollars and assumption of liabilities, there was numerous pleadings and challenge deadlines for the liens and the sale order was entered and there was a subsequent inventory sale that was subject to S&S's lien. There were modifications to the financing orders that required additional professional carve-outs. None of these things were ever raised by Mission as a waiver or a re-contribution. And in fact, when Judge Panos was assigned to the case, we had status conferences and his questions were direct. Is there a challenge to these liens and do they still extend to the debtor's assets? The answer by Mission's counsel was yes, they did. And so the process was, for the court to understand, is because Mission had challenged S&S's position on a re-characterization basis under the sale order, we waited until after your honor's opinion in the first circuit was final before moving for motion for relief from state because in that instance, you could see a potential issue where they say, oh, there's still the re-characterization issue, it's still a live issue and we haven't made up our mind yet until whether we're going to appeal the claim. The first circuit sale order until later. And so we waited until after that period to find the motion for relief from state. We were anticipating, based upon these hearings with Judge Panos, that Mission would arrive to the court with some opposition to the motion for relief from state to demonstrate that its administrative claims somehow magically would have priority over its admitted and acknowledged S&S lien, which extended to the debtor's property. And instead, we get this opposition of re-contribution of assets, which is nowhere in the record as your honors have noted, and a complete surprise. We were not unaware of this theory up until that day, three and a half years and all this litigation having happened. So no, the long way of answering your question there is no, I'm not familiar with any way that that could have occurred and it did not occur. And in fact, even in the Mission's briefs to this day, there's no signaling of what the explicit or implicit waiver was by S&S of its lien in this case. It doesn't exist. And that's why we've taken the position, not only is this moot, we've mentioned in our briefs that the case is frivolous. We do not believe that there's any support whatsoever for the threshold issue of what Mission is suggesting, the re-contribution or some sort of waiver in this case. I want to turn also to the question or the issue about the shifting burden. And it's important because it deals with this re-contribution theory. Mission showed up at the hearing before the bankruptcy judge with a re-contribution theory. And after Judge Panos recognized that there was no support for that whatsoever in the record, he suggested to Mission's counsel, maybe you're making an argument that there was some sort of waiver, but that was never brought by Mission in the first instance. But now we see in the First Circuit brief that it was the bankruptcy court improperly put the burden on Mission to prove that S&S had waived its lien. And that's not what happened in this case, Your Honors. What happened was S&S showed up at that hearing with ample record proof that it had a $5 million secured claim that had previous to that point never been challenged and for which all the challenge deadlines had passed. And that was 10 times the amount of the remaining asset that was in the estate. There was no equity in the property and there was no need for that cash for an effective reorganization. So the court was proper and did not abuse its discretion in granting the motion. It then denied the request for a stay and the BAP did the exact same thing. And the BAP's decisions were thorough and we believe are correct as well. I think that's all I have unless Your Honors have any questions. We do think the appeal was moot or alternatively ask this court to affirm the bankruptcy court decision. And because of its reliance on waived or otherwise barred arguments, we ask this court to consider awarding fees and double costs in this appeal. Judge Selya, do you have additional questions of Mr. Candon? No, I do not. Judge Kayada? No, I do not, Chief Judge Howell. All right, thank you. Mr. Candon, would you please at this time mute your audio and video? And Attorney Keech, you should please unmute your audio and video. And I need to once again ask Judge Selya and Kayada to test their microphones again. Judge Selya? Testing my microphone. Judge Kayada? Yes, testing my microphone. Mr. Keech? Thank you, Your Honor. First, let me address some specific points raised by counsel. First and foremost, we are in no way collaterally attacking any pre-existing order of any bankruptcy court, or for that matter, any other court. As Judge Pano specifically ruled below, Judge Deasy's sale order was entirely silent with respect to the issue of the disposition of the assets and whether or not there was a lien on the assets, with the exception of the manner in which he calculated the bid amounts. Let me make it very clear, we're not challenging that mathematics whatsoever. We support it. Because if you look at the math, it means that the bankruptcy court, Judge Deasy, understood perfectly well that the parties had agreed that the, quote, left-behind assets would be unencumbered. He understood that perfectly, and that's why he calculated the bids the way he did. We're not challenging his order, we're supporting it. It's also important to note that Judge Pano, in his ruling, did not say that we had waived anything, any argument of any kind. In fact, we had been consistent in saying that there was no security interest in the $537,000 worth of proceeds at issue here. We had been unwavering in that position, and in fact had asked for discovery and for evidence to be put in with respect to that position. There was never any, frankly, confusion over the re-contribution theory versus a waiver theory. It simply reflects what each party had to do in order to accomplish the agreement that had been reached at auction. We had to re-contribute. That's the way it happened for Mission. S&S could accomplish the same thing by waiving its lien. There was no distinction or conflict. Did the sale order say anything to the effect that S&S was waiving its lien? It didn't because the issue, frankly, was not before the court, Your Honor. The parties had agreed on a methodology, and the court adopted it in doing its calculation. It didn't say that we had agreed to re-contribute it either, but if you look at the manner in which it calculated the values, it is absolutely inexplicable in any other way. I think it's also important to note, Your Honor, that the parties thereafter, including Judge Deasy, acted entirely consistently with the idea that the lien had been waived. Mr. Condon pointed to the so-called inventory sale motion, where they asserted in a footnote that they might still have a lien. The debtor didn't agree, by the way, with that footnote, and Judge Deasy actually disavowed it. Judge Deasy's ruling made it abundantly clear that there were no restrictions on the assets left behind, and the debtor was free to sell them to anybody it wanted to, and that if S&S wanted to acquire the inventory, which it purported to want to do, they had to pay cash for it. Well, why would Judge Deasy make them pay cash for the inventory they left behind if they had a lien on it and could simply credit it? And the answer is, the only explanation for why they would have to pay cash is because they didn't have a lien. Thank you, Mr. Keach. Mr. Keach, your time has run out. Thank you, Your Honor. Mr. Toomey. Yes, sir. Yes, Judge. This session of the Honorable United States Court of Appeals is now recessed until the next session of this Court. God save the United States of America and this Honorable Court. Counsel, you may disconnect from the meeting. IT can stop both recordings and the live audio stream.